ANDERSON, Justice
(dissenting).
The court affirms the Panel’s determination that appellant violated Rule [1]5.5(a), which provides that a “lawyer shall not *670 practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction.” Minn. R. Prof. Conduct 5.5(a). But as an exception to this rule, a lawyer admitted in another jurisdiction may provide temporary legal services in Minnesota if the services “arise out of or are reasonably related to the lawyer’s practice in a jurisdiction in which the lawyer is admitted to practice.” Minn. R. Prof. Conduct 5.5(c)(4). The court concludes that Rule 5.5(c)(4) does not apply because the services that appellant provided here — assisting family members with a judgment-collection negotiation — are not “reasonably related” to his practice of law in Colorado. I disagree.
Appellant argues that Rule 5.5(c)(4) applies because his in-law’s judgment-collection matter was “reasonably related” to his practice in Colorado, which includes judgment-collection work. Appellant contends that he has experience with judgment collections and that collection work is an integral and necessary part of his litigation practice in Colorado. Upon review of the record, I agree that appellant’s temporary provision of legal assistance to his parents-in-law regarding the negotiation of a small collection matter in Minnesota is “reasonably related” to appellant’s practice of law in Colorado. Therefore, the exception in Rule 5.5(c)(4) applies, and respectfully, I dissent.
In concluding that appellant’s work for his parents-in-law was not “reasonably related” to his practice in Colorado, the court primarily focuses on appellant’s practice in the areas of environmental and personal-injury law. But, as the court notes, appellant also has experience with collection work, as reflected in the record. Appellant argues that he has engaged in and developed experience with collection work in his litigation practice. More specifically, appellant testified to the Panel that “collection work” is “an integral part of my litigation practice.” He testified that in the past seven years, he has engaged in judgment-collection work and has participated in eight trials in this area of practice. In addition, he demonstrated that, in a single previous month, he had made three filings dealing with judgment collections, which he submitted to the Panel as exhibits.
Based on this record, I would conclude that appellant’s assistance with a small judgment-collection negotiation for his parents-in-law, including the emails to D.R., were “reasonably related” to appellant’s practice in Colorado, which satisfies Rule 5.5(c)(4). The “reasonably related” exception in Rule 5.5(c)(4)-is a broad, catch-all exception that is intended to exempt circumstances such as those presented here. Moreover, the familial connection between appellant and his in-laws, and the fact that they contacted appellant in Colorado for assistance, should be an additional consideration that supports a finding that the matter was “reasonably related” to his practice in Colorado under Rule 5.5(c)(4).
The exception established by ABA Model Rule 5.5(c)(4) — which is identical in wording to our Rule 5.5(c)(4) — is described as a “broad catch-all” and a “safe harbor” for out-of-state lawyers to engage in temporary practice that is “reasonably related” to the lawyer’s home-state practice. Ronald D. Rotunda & John S. Dzienkow-ski, Legal Ethics: The Lawyer’s Deskbook on Professional Responsibility § 5.5-2, at 1112 (2016) (emphasis added); see also Am. Bar Ass’n & Bureau of Nat’l Affairs, Inc., ABA/BNA Lawyer’s Manual on Professional Conduct 21:2110 (2009).
Rule 5.5(c)(4) also closely follows the Restatement, which states: “A lawyer currently admitted to practice in a jurisdiction may provide legal services to a client: ... at a place within a jurisdiction in *671 which the lawyer is not admitted to the extent that the lawyer’s activities arise out of or are otherwise reasonably related to the lawyer’s practice under Subsection (1) or (2).” Restatement (Third) of the Law Governing Lawyers § 3(3) (Am. Law Inst. 2000). One of the comments to this section states that it is “clearly permissible for a lawyer from a home-state office to direct communications to persons and organizations in other states (in which the lawyer is not separately admitted), by letter, telephone, telecopier, or other forms of electronic communication.” Id. at § 3 cmt. e (emphasis added).
As explained in the Restatement, the prior, more restrictive rules governing interstate practice by nonlocal lawyers “were formed at a time when lawyers conducted very little [interstate] practice” and thus “imposed little actual inconvenience.” Id. By contrast today, “as interstate and international commerce, transportation, and communications have ■ expanded, clients have increasingly required a truly interstate ... practice by their lawyers.” Id. The ABA recognized that rule changes were needed as the frequency and ease of multistate practice increased, supported by electronic communication and remote services (e.g., e-mails, phone and video conferencing, electronic filing). Rotunda & Dzienkowski, supra, at 1100-01. In this modern context, lawyers routinely communicate from one jurisdiction with a client located in another jurisdiction. Id. at 1101. Thus, the ABA Model Rules “encouraged ... [the removal of] unnecessary restrictions on interstate practice.” Id. at 1100-01.
The comments to Rule 5.5(c)(4) provide guidance on whether a “reasonable relationship” exists between the lawyer’s temporary services in Minnesota and the lawyer’s practice in another jurisdiction. See Minn. R. Prof. Conduct 5.5 cmt. 13-14. Comment 14 explains that “[a] variety of factors” may evidence such a reasonable relationship. Id. at cmt. 14. The examples and factors to consider in comment 14 are not exhaustive, nor are they mandatory. See id. (providing examples and factors that “may” or “might” support a reasonable relationship); see also Minn. R. Prof. Conduct, Scope cmt. 14 (“Comments do not add obligations to the rules but provide guidance.... ”). One factor provided in Rule 5.5, comment 14, relates to whether the lawyer’s temporary services draw on the lawyer’s “expertise developed through the regular practice of law” in a particular body of law. Minn. R. Prof. Conduct 5.5 cmt. 14. Here, the record reflects that appellant has developed experience and expertise in the area of judgment collections through his participation in eight trials and multiple filings.
The Director argues that the guidance in comment 14 weighs against applying the Rule 5.5(c)(4) exception because the record does not establish that appellant’s parents-in-law specifically sought appellant for his “recognized expertise ... involving a particular body of federal, nationally-uniform, foreign, or international law.” See Minn. R. Prof. Conduct 5.5 cmt. 14. I agree that the record does not meticulously detail the extent to which the law applicable to appellant’s collection practice is “nationally uniform” or the extent to which his experience with collection work is “recognized.” But as discussed above, the explanatory language in the comments is not mandatory or exhaustive — it merely provides examples of the types of temporary legal services that may satisfy the broad, “reasonably related” catch-all exception under Rule 5.5(c)(4). The broad, “reasonably related” requirement and the principles underlying the guidance in comment 14 sure *672 ly apply here.[1] The record reflects that appellant developed experience and “expertise” with a particular body of law— collections — in at least eight trials over seven years, including three judgment-collection filings within a single month.
In addition, the clients’ relationship to appellant, including their familial connection and the clients’ contacts with appellant in his home state, should be considered in the “reasonable relationship” analysis. The comments to the Restatement advise That, in. determining whether an out-of-state lawyer’s activities “reasonably relate” to the lawyer’s practice in a state of admission, “several, factors are relevant, including the following: [whether the client] is from the lawyer’s home state, has extensive contacts with that state, or contacted the lawyer there.” Restatement (Third) of the Law Governing Lawyers § 3 cmt. é (emphasis added). Here, the clients contacted their son-in-law, appellant, in his home state of Colorado.
Additional analogous support is provided in comment 14 to Rule 5.5(c)(4), which states that one factor to consider is whether the “lawyer’s client may have been previously represented by the lawyer.” Minn. R. Prof. Conduct 5.5(c)(4) cmt.. 14. Although the record does not indicate whether appellant ever, previously represented his parents-in-law, the principle underlying this comment — a relationship of trust and familiarity with the lawyer’s capabilities— is applicable here. The recognition that a sustained lawyer-client relationship would allow an attorney to perform legal work for the client in other jurisdictions, based on confidence and trust, is reflected in the ABA’s recommendation for the proposed Model Rule 5.5. Regarding the exception under Rule 5.5(c)(4), the ABA stated:
[Model Rule 5.5(c)(4) ] would respect .,. client-lawyer relationships by permitting a client to retain a lawyer to work on multiple related matters, including some having no connection to the jurisdiction in'which the lawyer is licensed.... [Clients are better served by having a sustained relationship with a lawyer or law firm in whom the client has confidence.
Am. Bar Ass’n, Client Representation in the 21st Century: Report of the Commission on Multijurisdictional Practice 30-31 (2002) (emphasis added). The ABA recommendation further explains that in.such cases of reasonably related, temporary services under Rule 5.5(c)(4), it is “sufficient to rely on the lawyer’s home state as the jurisdiction with the primary responsibility to ensure that the lawyer has the requisite character and fitness to practice law”, because the home state .“has a substantial interest in ensuring .that all aspects of the lawyer’s provision of legal services, wherever they occur, are conducted competently and professionally.” Id. at 30.
Finally, as a policy matter, the implications of the court’s decision are troubling and counterproductive. The ABA Model Rule 5.5(c), as adopted by our state, was *673 intended as a broad catch-all that “represent[s] a bold step towards new latitude in [a] multijurisdictional practice of law,” which accommodates the increasingly mobile and electronic nature of modern, national legal practice. See Rotunda- & Dzienkowski, supra, at 1100-01,1112. Today’s decision represents a step backwards. By the court’s reasoning, when family members or friends — an abundant source of clients — email or call a practitioner admitted in another state, seeking assistance in areas in which the practitioner is experienced and competent, relying on a relationship of trust and confidence, they múst be turned away. Those potential clients must then expend unnecessary time and resources to research and hire local counsel — even for minor, temporary services in which the out-of-state lawyer could have provided efficient, inexpensive, and competent service. Simply put, the court’s decision is contrary to the princi-ptes and policy goals intended by Rule 5.5(c).
In sum, this case involves clients contacting an attorney, their son-in-law, in his home state of Colorado,, to request his assistance regarding a small collection matter — an area that reasonably relates to appellant’s expertise and experience in his Colorado litigation practice. Based on the relationship and contacts between the clients, appellant, and appellant’s practice of law in Colorado, there is a sufficient “reasonable relationship” here to satisfy the broad, catch-all exception under Rule 5.5(c)(4). For the above reasons, I conclude that appellant did not engage in professional misconduct because the exception in Rule 5.5(c)(4) applies.[2] Therefore, I would reverse the Panel’s decision to admonish appellant. I respectfully dissent.
LILLEHAUG, Justice
(dissenting).
I join in the dissent of Justice Anderson.
*674 CHUTICH, Justice
(dissenting).
I join in the dissent of Justice Anderson.

. The court argues that I reach this conclusion “without citing any legal support.” But comments to the' Rules of Professional Conduct "explain[] and illustrate[] the meaning and purpose of the rule[s].” Minñ. R. Prof. Conduct Scope cmt. 21. They are "intended as guides to interpretation" and therefore are persuasive when- applying the Rules of Professional Conduct to the case at hand. Id.
The court is also incorrect that my interpretation "allows the exception to swallow the general rule.” This is not so. The lawyer's services must still be "reasonably related” to the lawyer's practice in the state of admission. Although, this exception is broad, it does not encompass subject matters unrelated to the lawyer’s practice.

. In addition, I observe that any violation of Rule 5.5(a) requires reference to other Minnesota laws or rules to determine whether a lawyer practiced "in violation of the regulation of the legal profession." Minn. R. Prof. Conduct 5.5(a). The court’s opinion does not cite the substantive "regulation” that appellant violated. The Director cited a statute that prohibits certain types of conduct except by persons admitted and licensed to practice as attorneys in Minnesota. See Minn.Stat. § 481.02, subd. 1 (2014). This statute prohibits several types of conduct, including “by word, sign, letter, or advertisement, [ ] hold[ing] out ... as being engaged in advising or counseling ... or in furnishing to others the services of a lawyer!,] ” and "giv[ing] legal advice or counsel [or] performing] for or furnish[ing] to another legal services” for a "fee or any consideration" Id. The second type of conduct is inapplicable because appellant did not charge any fee. The first type of conduct, a "holding out” violation, may or may not be applicable based on appellant's email exchanges with D.R., including his statement that he "represented] [his parents-in-law] in all matters related to [the] delinquent ¿ccount.” The panel found that appellant "was — although maybe not paid, he certainly has held out the fact that he represented clients.” But there are also persuasive arguments that. appellant's conduct was not a "holding out” violation, including, but riot limited tó, the absence of any communication to the general-public.
Although the issue of whether there was an underlying "holding out” violation was not argued by either party and therefore need not be resolved here, there are at least a couple of concerns worthy of comment. First, it is unclear to me whether, ultimately, appellant’s emails were actually a violation of the "holding] out” clause according to the meaning and intent of section ,481.02, subdivision 1. Second, the Director's charges of unprofessional conduct did not clearly specify that appellant was charged with a violation of the , "hold[ing] out” , clause of this .statute. Instead, the Director summarily referred to the entire statutory provision and described it as prohibiting nonlicensed attorneys from "providing legal services." This lack of specificity may raise due process concerns.